## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY,<br>　　　　　　　Plaintiff<br><br>　　　　v.<br><br>UCAL SYSTEMS, INC. d/b/a AMTEC PRECISION PRODUCTS, *et al.*,<br>　　　　　　　Defendants | No. 21 CV 3227<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

This case involves an insurance coverage dispute between Plaintiff Westfield Insurance Company ("Westfield") and Defendant UCAL Systems, Inc. ("UCAL") concerning Westfield's duty to defend and indemnify UCAL in state litigation brought by Defendant Marty Jaeger under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. (*See generally* R. 69.)[1] The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (R. 73; R. 76.) For the reasons discussed below, Westfield's motion for summary judgment is granted and UCAL's motion for summary judgment is denied.

---

[1] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

The Court takes the following facts from the parties' Local Rule 56.1 submissions,[2] the materials cited therein, and other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted.

### I.  THE UNDERLYING COMPLAINT

This case concerns several insurance policies that Westfield issued to UCAL, providing commercial general liability ("CGL") and umbrella insurance coverage. (R. 79 ("Def.'s Resp. to Pl.'s SOF") ¶ 22.) While those policies were in effect, Defendant Jaeger, a former UCAL employee, filed a putative class action complaint against UCAL in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois, Case No. 21 L 101 (the "*Jaeger* Lawsuit"). (*Id.* ¶ 9; *see also* R. 69-1.) Jaeger alleged that, during his employment with the company from June 2013 through May 2019, UCAL violated BIPA by collecting and disseminating his biometric information without authorization, and by failing to maintain a publicly available biometric data retention and deletion policy. (Def.'s Resp. to Pl.'s SOF. ¶¶ 10–11, 13–14; R. 69-1 ¶¶ 2, 15–17, 37.) The *Jaeger* Lawsuit seeks statutory damages on behalf of Jaeger and the putative class members for each of UCAL's alleged BIPA violations within the applicable limitations period. (Def.'s Resp. to Pl.'s SOF. ¶¶ 12, 14; R. 69-1 ¶¶ 23, 40.)

---

[2] *See* Plaintiff's Statement of Undisputed Material Facts, (R. 74 ("Pl.'s SOF")); Defendant's Statement of Undisputed Material Facts, (R. 77 ("Def.'s SOF")); Defendant's Response to Plaintiff's Statement of Undisputed Material Facts, (R. 79 ("Def.'s Resp. to Pl.'s SOF")); Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, (R. 82 ("Pl.'s Resp. to Def.'s SOF").)

After the *Jaeger* Lawsuit was filed, UCAL tendered its defense to Westfield. (Def.'s Resp. to Pl.'s SOF ¶ 15.) Westfield did not accept the tender; instead, it initiated this lawsuit.[3] (*Id.* ¶¶ 15–16.) Westfield seeks a declaration that it owes no duty to defend or indemnify UCAL in the underlying *Jaeger* Lawsuit under its CGL/umbrella coverage policies covering the period of June 1, 2013 through June 1, 2022. (*Id.* ¶ 22; *see also* R. 69.) The policy provisions relevant to the resolution of this matter are outlined below.

## I. THE 2013/14 AND 2014/15 POLICIES

Westfield issued a CGL/umbrella coverage policy (Policy No. CMM 5270929) to UCAL as a named insured that was effective from June 1, 2013, to June 1, 2014, and was renewed to cover the period of June 1, 2014, to June 1, 2015 (together, the "13/15 Policies"). (R. 82 ("Pl.'s Resp. to Def.'s SOF") ¶ 7.)

The CGL component of the 13/15 Policies provide that Westfield "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (*Id.* ¶¶ 8, 10; R. 69-4 ("Ex. D") at 135; R. 60-5 ("Ex. E") at 143.) They further provide that Westfield has "the right and duty to defend the insured against any 'suit' seeking [such] damages." (Ex. D at 135; Ex. E at 143.) "Personal and advertising injury" is defined as "injury, including consequential 'bodily injury', arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy . . .," among other offenses. (Ex. D at 144; Ex. E at 152.)

---

[3] The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). (Pl.'s Resp. to Def.'s SOF ¶¶ 1–6.)

The 13/15 Policies list various exclusions for which CGL coverage does not apply. (Pl.'s Resp. to Def.'s SOF ¶¶ 8–11.) As relevant here, those exclusions are:

> **Knowing Violation of Rights of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

(Ex. D at 135; Ex. E at 143.)

> **Recording and Distribution of Material or Information In Violation of Law Exclusion**
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
> (1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
> (2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
> (3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
> (4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Ex. D at 152; Ex. E at 143.)

> **Employment-Related Practices Exclusion**
> "Personal and advertising injury" to:
> (1)    A person arising out of any:
>     (a)    Refusal to employ that person;
>     (b)    Termination of that person's employment; or
>     (c)    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline,

4

> defamation, harassment, humiliation or
> discrimination directed at that person; . . .

(Ex. D at 150; Ex. E at 158.)

The umbrella coverage part of the 13/15 Policies provides coverage for personal and advertising injury for the insured's "ultimate net loss" in excess of the "retained limit," and provides for a defense when "underlying insurance" does not provide coverage or when the limits of the "underlying limits" are exhausted. (Pl.'s Resp. to Def.'s SOF ¶¶ 12, 14; Ex. D at 307; Ex. E at 323–24.) The 13/15 Policies' umbrella coverage includes a definition of "personal and advertising injury," as well as the abovementioned exclusions, which, for all material purposes, are identical to their general commercial liability counterparts. (Pl.'s Resp. to Def.'s SOF ¶¶ 13, 15; Ex. D at 307–08, 317, 319; Ex. E at 324–26, 334.)

## II.  THE 2015/16 AND LATER POLICIES

UCAL continued to renew Westfield's CGL/umbrella coverage policy annually from June 1, 2015, to June 1, 2021 (the "15/21 Policies"). (Pl.'s Resp. to Def.'s SOF ¶ 16.) The only difference, relevant here, between the 13/15 Policies and the 15/21 Policies is that the 15/21 Policies include an endorsement that excludes from coverage personal or advertising injury arising out of access or disclosure of confidential or personal information and data-related liability. (*Id.* ¶ 19.) The exclusion provides:

> **Access or Disclosure of Confidential or Personal Information**
> "Personal and Advertising Injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial

5

> information, credit card information, health information or
> any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for
> notification costs, credit monitoring expenses, forensic
> expenses, public relations expenses or any other loss, cost
> or expense incurred by you or others arising out of any
> access to or disclosure of any person's or organization's
> confidential or personal information.

(R. 69-6 ("Ex. F") at 156; R. 69-7 ("Ex. G") at 164; R. 69-8 ("Ex. H, pt. 1") at 173; R. 69-11 ("Ex. I, pt. 2") at 76; R. 69-14 ("Ex. J") at 192; R. 69-17 ("Ex. K, pt. 3") at 25; R. 69-20 ("Ex. L") at 192.) The umbrella coverage part of the 15/21 Policies contains an identical Access or Disclosure of Confidential or Personal Information endorsement. (Ex. F at 329; Ex. G at 339; R. 69-13 ("Ex. I, pt. 4") at 76; Ex. J at 393; R. 69-19 ("Ex. K, pt. 5") at 61; Ex. L at 399.)

Pending before the Court are the parties' renewed cross-motions for summary judgment. The Court struck the parties' original motions and accompanying briefs due to their ancillary litigation of notices of supplemental authority filed without leave. (R. 51.) Unphased by the Court's prior admonition, the parties have once again filed numerous notices of supplemental authority, as well as corresponding responsive briefs. (*See* R. 86; R. 89; R. 92; R. 93; R. 95; R. 96; R. 97; R. 99; R. 100; R. 110; R. 117; R. 119; R. 120.) In these notices, the parties, at times, have made certain substantive requests without accompanying motions, including to defer ruling on the instant cross-motions for summary judgment. While the Court previously entertained such a request, it declines to do so further. *See Dorsey v. Varga*, 55 F.4th 1094, 1104 (7th Cir. 2022) ("A district court has the inherent power to manage its docket . . ..."). The parties' notices of supplemental authority have unduly extended the summary

judgment briefing schedule and burdened the Court with a seemingly unending series of filings submitted without prior approval. In the absence of a motion to stay—the proper way to request deferment of a ruling—the Court sees no just reason for continued delay. The Court, therefore, declines to defer its ruling on the present motions any further.

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is 'material' if it is one identified by the law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the Court gives the nonmoving party "the benefit of reasonable inferences from the evidence," it does not construe "speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). "Where, as here, the parties file cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017) (citation omitted).

## ANALYSIS

In support of its motion for summary judgment, Westfield argues that it owes no duty to defend UCAL under the 13/15 and 15/21 Policies, either because UCAL is not entitled to coverage under said policies or because an exclusion applies to bar

coverage. (R. 75 at 2–15.) For its motion, UCAL argues the opposite: that the *Jaeger* Lawsuit triggers coverage under the 13/15 and 15/21 Policies, and there is no applicable policy exclusion that would bar coverage. (R. 78 at 3–15.)

As a federal court exercising diversity jurisdiction, the Court must apply Illinois substantive law and resolve the parties' dispute in the same manner as would the Illinois Supreme Court. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021); *Webber v. Butner*, 923 F.3d 479, 482 (7th Cir. 2019). "In the absence of Illinois Supreme Court precedent," the Court must use its "best judgment to determine how that court would construe its own law." *Mashallah, Inc.*, 20 F.4th at 319. In doing so, the Court may consider Illinois appellate court decisions. *Id.*

Under Illinois law, an insurer's duty to defend is broader than its duty to indemnify. *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579–80 (7th Cir. 2021) (collecting cases applying Illinois law). The insurer must supply the insured a defense so long as the facts alleged "potentially fall within the scope of the policy." *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023) (citing *United Fire & Cas. Co.*, 7 F.4th at 580). In determining whether a duty to defend exists, the Court compares the allegations in the underlying complaint with the relevant provisions of the insurance policy and assesses whether the nature of the liability asserted falls within the scope of the policy's coverage. *Id.*

In Illinois, the interpretation of insurance policies, like any other contract, is a question of law. *Mashallah,* 20 F.4th at 319 (citing *Sanders v. Ill. Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. 2019)). Thus, "the normal rules of contract interpretation apply."

*Wynndalco*, 70 F.4th at 995; *see also Hess v. Est. of Klamm*, 161 N.E.3d 183, 187 (Ill. 2020) (same). The primary objective in interpreting an insurance policy is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Mashallah*, 20 F.4th at 319 (citing *Sanders*, 157 N.E.3d at 467). The policies' provisions must be viewed as a whole, and meaning must be given to each provision. *Wynndalco*, 70 F.4th at 995 (citing *Founders Ins. Co. v. Muñoz*, 930 N.E.2d 999, 1004 (Ill. 2010)). Provided there is no ambiguity, policy terms will be given their plain and ordinary meaning, and applied as written. *Id.*; *Mashallah*, 20 F.4th at 319.

## I.   COVERAGE UNDER THE 13/15 AND 15/21 POLICIES

As an initial matter, UCAL bears the burden of showing that Westfield's policies cover the claims at issue in the *Jaeger* Lawsuit. *See e.g.*, *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021) (citing *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009)). The parties do not dispute that the BIPA violations alleged in the *Jaeger* Lawsuit fall within the policies' definition of "personal or advertising injury" since they arise out of "material that violates a person's right of privacy." (*See, e.g.,* Ex. D at 144); *see also Wynndalco*, 70 F.4th at 997 (holding underlying BIPA lawsuit fell within the coverage of the policy because a BIPA violation is a violation of privacy).

Westfield, however, argues that the *Jaeger* Lawsuit does not trigger coverage under the 13/15 Policies because UCAL is not liable for personal and advertising injuries beyond the limitations period applicable to BIPA claims. (R. 75 at 2–3.) Westfield points to paragraph 23 of the underlying complaint, which defines the

purported class as: "All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of [UCAL] within the state of Illinois at any time within the applicable limitations period." (R. 69-1 ¶ 23.) At the time the *Jaeger* Lawsuit was filed, the applicable limitations period for BIPA claims had not yet been decided. The Illinois Supreme Court subsequently held that BIPA claims are subject to the default five-year limitations period found in 735 ILCS 5/13-205. *See Tims v. Black Horse Carriers, Inc.*, 216 N.E.3d 845, 853 (Ill. 2023). Because the *Jaeger* Lawsuit was filed in 2021, Westfield asserts that UCAL is only liable for conduct that occurred in 2016 or later and, thus, the earliest policy potentially implicated by the suit is the 2015/16 policy. (R. 75 at 2–3.)

Westfield's argument is inconsistent with the breadth of an insurer's duty to defend under Illinois law. "An insurer has a duty to defend its insured 'unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage.'" *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021) (quoting *G.M. Sign, Inc. v. State Garm Fire & Cas. Co.*, 18 N.E.3d 70, 77 (Ill. App. Ct. 2014)); *accord Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). It is the nature of the allegations—not their merits—that matter. *See Ill. Tool Works Inc. v. Travelers Cas. & Sur. Co.*, 26 N.E.3d 421, 425 (Ill. App. Ct. 2015) ("While it is clear from the record, and the parties do not dispute, that [the insured] is unlikely to actually be found liable in the underlying suits, that question is not before us."); *see also United Fire & Cas. Co.*, 7 F.4th at 581 ("[W]hat the parties know or believe the alleged facts

to be, the outcome of the underlying case, or the merits of the claim" is of no matter in determining the duty to defend). Even if the allegations are "groundless, false, or fraudulent, the insurer is obligated to defend." *United Fire & Cas. Co.*, 7 F.4th at 581 (citing 14 Couch on Insurance § 200:20) (footnotes omitted); *accord Midwest Sporting Goods*, 828 N.E.2d at 1098; *Pekin Ins. Co. v. Centex Homes*, 72 N.E.3d 831, 839 (Ill. App. Ct. 2017).

Here, the *Jaeger* Lawsuit alleges a covered injury arising from UCAL's collection of Jaeger's biometric data beginning as early as June 2013. (R. 69-1 ¶¶ 15–20.) Such allegations, if true, potentially fall within the policy's coverage, thereby triggering Westfield's duty to defend under the 13/15 Policies. The fact that some of the allegations in the *Jaeger* Lawsuit may be time-barred does not obviate Westfield's duty to defend against them. *See, e.g.*, *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1136 (7th Cir. 2012) (Hamilton, J., concurring) ("Even if the plaintiff in the underlying case brings a claim that is clearly not yet ripe or is clearly barred by the statute of limitations, an insurer may still have a duty to defend. . . against the claim."). The *Jaeger* Lawsuit thus triggered coverage under the 13/15 Policies.

Relatedly, Westfield argues that UCAL should be held estopped or to have waived any claim to coverage under the 15/21 Policies because it withdrew and subsequently re-tendered its defenses under those policies. (R. 75 at 13.) Under Illinois law, waiver is the voluntary relinquishment of a known right, *People v. Blair*, 831 N.E.2d 604, 615 n. 2 (Ill. 2005), whereas estoppel is a closely related but distinct equitable doctrine requiring, among other things, detrimental reliance on a

misrepresentation or omission and a showing of prejudice. *See, e.g.*, *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000). Here, neither waiver nor estoppel is applicable. Westfield was on notice of the fact that the Jaeger Lawsuit potentially implicated the 15/21 Policies since they were included in UCAL's original tender. (Def.'s Resp. to Pl.'s SOF ¶¶ 15–16.) Moreover, UCAL's withdrawal of its tender under the 15/21 Policies was done without prejudice. (*Id.* ¶ 19.) Westfield fails to provide any explanation as to how UCAL's subsequent re-tender was prejudicial, nor does it provide any case law to support its waiver or estoppel arguments. Accordingly, the Court does not find that UCAL waived coverage under the 15/21 Policies.

## II. POLICY EXCLUSIONS

Once an insured has shown that its claims fall within the coverage of the policy, the burden shifts to the insurer to "affirmatively establish that an exclusion applies" that precludes coverage. *Wynndalco*, 70 F.4th at 997 (citing *Bradley Hotel Corp.*, 19 F.4th at 1006). "Exclusions are read narrowly and apply only if their application is 'clear and free from doubt.'" *Bradley Hotel Corp.*, 19 F.4th at 1006–07 (quoting *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)); *see also Nat'l Fire Ins. of Hartford v. Walsh Constr. Co.*, 909 N.E.2d 285, 288 (Ill. 2009).

Westfield contends that the Employment-Related Practices Exclusion, the Knowing Violations Exclusion, and the Recording and Distribution of Material or Information in Violation of Law Exclusion bar coverage under the 13/15 and 15/21 Policies, and that the Access or Disclosure of Confidential or Personal Information Exclusion bars coverage under the 15/21 Policies. (R. 75 at 4–15.)

12

### A.     THE EMPLOYMENT-RELATED PRACTICES EXCLUSION

Westfield's Employment-Related Practices Exclusion bars coverage for personal and advertising injury to "[a] person arising out of any: (a) refusal to employ that person; (b) termination of that person's employment; or (c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." (*See* Ex. D at 150, 308; Ex. E. at 158, 325; Ex. F at 154, 316; Ex. G at 162, 326; Ex. H, pt. 1 at 171; Ex. I, pt. 2 at 74; Ex. I, pt. 4 at 61; Ex. J at 190, 377; Ex. K. pt. 3 at 23; Ex. K, pt. 5 at 46; Ex. L at 190, 383.) Clearly, "[p]arts (a) and (b) of this exclusion don't have anything to do with BIPA claims." *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th 438, 443 (7th Cir. 2024). So, that leaves subsection (c).

Westfield argues that subsection (c) applies to bar coverage because an employer mandate to use a biometric timekeeping and attendance tracking system constitutes an "employment-related practice[]" or "polic[y]." (R. 75 at 9.) But subsection (c) requires that the employment-related practice or policy be "*directed at*" a particular employee. (*See, e.g.*, Ex. D at 150) (emphasis added); *see also Thermoflex Waukegan, LLC*, 102 F.4th at 443 ("Like the district court, we understand 'directed towards that person' as identifying acts that are employee-specific—much as parts (a) and (b) are employee (or applicant) specific."). "A general policy requiring all hourly workers to place their hands on a scanner" may be an employment-related practice, "but [it] is not 'directed [at]' any given employee." *Thermoflex Waukegan,*

*LLC*, 102 F.4th at 443. Rather, "[i]t is just a term or condition of employment, and this exclusion taken as a whole is not concerned with the terms and conditions of employment." *Id.* Accordingly, the Employment-Related Practices Exclusion does not bar coverage under the 13/15 and 15/21 Policies.

### B. KNOWING VIOLATION OF RIGHTS OF ANOTHER EXCLUSION

The same goes for the Knowing Violations Exclusion. This exclusion bars coverage under Westfield's CGL/umbrella policies for an injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (Ex. D at 135, 307; Ex. E at 143, 324; Ex. F at 139, 315; Ex. G at 147, 325; Ex. H, pt. 1 at 156; Ex. I, pt. 2 at 59; Ex. I, pt. 4 at 60; Ex. J at 175, 376; Ex. K, pt. 3 at 8; Ex. K, pt. 5 at 45; Ex. L at 175, 382.) BIPA, however, allows aggrieved individuals to recover for negligent violations of the statute, in addition to intentional and reckless violations. 740 ILCS 14/20(1), (2). Indeed, the *Jaeger* Lawsuit alleges that UCAL's violations of BIPA were "knowing and willful" or, alternatively, that UCAL "*negligently* failed to comply with BIPA." (R. 69-1 ¶ 41 (emphasis added).)

Under Illinois law, if the underlying complaint alleges several theories of recovery against the insured, "the duty to defend arises even if only one such theory is within the potential coverage of the policy." *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (citing *Md. Cas. Co. v. Peppers*, 355 N.E.2d 24, 28 (Ill. 1976)). Because the Knowing Violations Exclusion "bars coverage of claims for only the 'knowing infliction' of [personal and] advertising injury, and

14

because [insurers] have a duty to defend if any theory in the underlying complaint could potentially be covered," the exclusion does not bar potential coverage for the *Jaeger* Lawsuit under Westfield's policies. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 834 N.E.2d 562, 575–76 (Ill. App. Ct. 2005), *aff'd*, 860 N.E.2d 307 (Ill. 2006).

## C. THE RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

The Court reaches a different conclusion with respect to the Recording and Distribution of Material or Information in Violation of Law Exclusion, however. This exclusion bars coverage under the 13/15 and 15/21 Policies for "'[p]ersonal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate": (1) the TCPA; (2) the CAN-SPAM Act of 2003; (3) the FCRA or the FACTA; or (4) "[a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, or FCRA . . . , that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (Ex. D at 152, 319; Ex. E at 143, 326; Ex. F at 139, 317; Ex. G at 147, 327; Ex. H, pt. 1 at 156; Ex. I, pt. 2 at 59; Ex. I, pt. 4 at 62; Ex. J at 175, 378; Ex. K, pt. 3 at 8; Ex. K, pt. 5 at 47; Ex. L at 175, 384.)

At issue here is subsection (4), the exclusion's catch-all provision. Westfield contends that this catch-all provision encompasses statutes like BIPA that implicate the privacy right of secrecy and the collection and transmission of private information. (R. 75 at 8–9.). Since the *Jaeger* Lawsuit was filed in February 2021, there have been at least three seminal decisions addressing the scope and application

of privacy-related exclusions as applied to BIPA claims: *Krishna*, *Wynndalco*, and *Visual Pak*. Because this area of the law is quickly evolving and the Illinois Supreme Court has not yet addressed an exclusion identical to the one at issue here, the Court will engage in an extended review of these three decisions and explain how they inform the Court's decision in this case.

At the time the parties filed their briefs, the Illinois Supreme Court had already addressed a similar, but not identical, violation-of-statutes exclusion and held that it did not bar coverage of BIPA claims. *See W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 59–61 (Ill. 2021). The exclusion in *Krishna* included three subparts: the first two excluded claims under the TCPA and the CAN-SPAM Act, and the third was a catch-all provision that applied to personal and advertising injury arising out of a violation or alleged violation of "[a]ny statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communication or distribution of material or information." *Id.* at 60.

The Illinois Supreme Court began its analysis with the exclusion's title: "Violation of Statutes that Govern E-Mails, Fax, Phone Calls *or Other Methods* of Sending Material or Information." *Id.* (emphasis in original). The *Krishna* court explained that the title indicated the exclusion covered statutes governing methods of communication, as did its text, which enumerated two statutes—the TCPA and the CAN-SPAM Act—concerning the regulation of methods of communication. *Id.*

The Illinois Supreme Court next applied the canon of *ejusdem generis* to the text, *id.*, which provides that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Ejusdem generis*, Black's Law Dictionary (12th ed. 2024). Applying this canon, the *Krishna* court took the position that:

> Where a violation-of-statutes exclusion has a title or heading that points to a particular category of statutes, where the statutes expressly identified in the exclusion fall within that very same category, and where there is some doubt about the reach of a broad catch-all provision immediately following the expressly-identified statutes, it is an appropriate application of *ejusdem generis* to construe the more general language of the catch-all provision as encompassing only that same category of statutes.

*Wynndalco*, 70 F.4th at 1001 (summarizing Illinois Supreme Court's analysis in *Krishna*). Accordingly, *Krishna* interpreted the catch-all provision as encompassing other statutes of the same general kind as the TCPA and CAN-SPAM Act that regulate methods of communications such as calls, faxes, and e-mails. 183 N.E.3d at 61. Because BIPA does not regulate methods of communication, the Illinois Supreme Court held that the exclusion did not bar coverage for such claims. *Id.*

Courts in this District have applied *Krishna*'s interpretive framework to similar, but not identical, violation-of-statute exclusions in the context of BIPA claims. *See, e.g., Nat'l Fire Ins. Co. of Hartford & Cont'l Ins. Co. v. Visual Pak. Co., Inc.*, __ N.E.3d __, 2023 IL App (1st) 221160, ¶¶ 42–43 *appeal denied sub nom.*, *Nat'l Fire Ins. Co. of Hartford v. Visual Pak Co., Inc.*, No. 130374, 2024 WL 2805509 (Ill. May 29, 2024) (collecting cases from the Northern District of Illinois). In applying

this framework, courts have reached conflicting conclusions based on differences in the applicable policy language. *Compare Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 853 (N.D. Ill. 2022) (relying on *Krishna* in finding that similar exclusionary language was ambiguous and must be construed in favor of coverage of BIPA claims), *with Cont'l W. Ins. Co. v. Cheese Merchs. of Am., LLC*, 631 F. Supp. 3d 503, 514–15 (N.D. Ill. 2022) (finding that the exclusionary language at issue was distinguishable from the language in *Krishna* and barred coverage of BIPA claims), *abrogated by Wynndalco*, 70 F.4th at 990.

During the pendency of the parties' motions, the Seventh Circuit seemingly resolved the division among the district courts. *See Wynndalco*, 70 F.4th at 1004–05. In *Wynndalco*, the Seventh Circuit considered whether a Distribution of Material in Violation of Statutes Exclusion barred coverage for BIPA claims. *Id.* at 993. The exclusion in *Wynndalco* included four subparts: the first three excluded claims under the TCPA, the CAN-SPAM Act, and the FCRA, and the fourth was a catchall provision that applied to personal and advertising injury arising out of "any other laws, statutes, ordinances, or regulations that address, prohibit or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material information." *Id.* at 993. The Seventh Circuit concluded that, while "a literal, plain-text reading of the catch-all provision would include BIPA violations," when read alongside the policy as a whole, the "provision would swallow a substantial portion of the coverage that the policy otherwise explicitly purports to provide in defining a covered 'personal or advertising injury.'" *Id.* at 997, 999.

18

The Seventh Circuit considered whether it was plausible to read the catch-all provision more narrowly such that it could encompass an injury resulting from a BIPA violation. *Id.* at 999. *Krishna*, it said, did not provide much guidance because the exclusion at issue there was materially different—in both title and text. *Id.* at 999, 1001–02. Neither *ejusdem generis*, nor the canon of *noscitur a sociis*—which provides that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it—permitted a narrower reading. *Id.* at 1004; *see also Noscitur a sociis*, Black's Law Dictionary (12th ed. 2024). Unable to resolve the ambiguity, the Seventh Circuit concluded the Distribution of Material in Violation of Statutes Exclusion did not bar coverage for BIPA claims. *Wynndalco*, 70 F.4th at 1004–05.

At the time *Wynndalco* was decided, neither the Illinois Supreme Court nor the Illinois Appellate Court had addressed a violation-of-statutes exclusion with language identical to the one that the Seventh Circuit had analyzed; nor had the state courts addressed an exclusion with language identical to the Recording and Distribution of Material or Information in Violation of Law Exclusion at issue here. That, however, changed once the Illinois Appellate Court decided *Visual Pak*. In *Visual Pak*, the Illinois Appellate Court considered a violation-of-laws exclusion identical to the one included in Westfield's policies. There, the state appellate court concluded that the Recording and Distribution of Material or Information in Violation of Law Exclusion was distinguishable from the exclusion addressed in *Wynndalco* and, "respectfully disagree[ing]" with the Seventh Circuit's application of Illinois law,

19

held that the exclusion barred coverage for injuries arising out of alleged BIPA violations. *See Visual Pak*, 2023 IL App (1st) 221160, ¶¶ 84, 120.

In reaching this conclusion, the Illinois Appellate Court began with an observation identical to the one made by the Seventh Circuit: when read in isolation, "it [was] simply impossible to deny" that the catch-all provision—which encompassed statutes that address, prohibit or limit "the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information"—implicated BIPA, which "regulates the collection, dissemination, and disposal of one's biometric identifiers and information." *Id.* ¶¶ 52, 55–56. Given this plain reading of the catch-all provision, the Illinois Appellate Court explained that it could end its analysis there and conclude that the exclusion bars coverage for BIPA claims. *Id.* ¶ 57. Following the Illinois Supreme Court's lead in *Krishna*, however, the Illinois Appellate Court continued its analysis by applying the *ejusdem generis* canon. *Id.*

*Visual Pak* began its application of *ejusdem generis* in the same place that the *Krishna* court did: the exclusion's title. *Id.* ¶ 60. "Unlike the title in [*Krishna*]," the title of the Recording and Distribution of Material or Information in Violation of Law Exclusion was "not limited to modes of communication." *Id.* The Illinois Appellate Court noted that while "the word 'distribution' may not add anything materially different from the title" in *Krishna*, "the word 'recording' is a different story." *Id.*

> 'Recording' is the gerund of the verb 'record,' which has
> many meanings but which, relevant here, the dictionaries
> define as 'to cause (sound, visual images, data, etc.) to be
> registered on something (such as a disc or magnetic tape)

20

> in reproducible form.' Another defines it as 'to put or set down in writing or some other permanent form.' Another: 'to set down in writing or the like, as for the purpose of preserving evidence.' Finally: 'to keep information for the future, by writing it down or storing it on a computer,' or 'to store sounds or moving pictures using electronic equipment so that they can be heard or seen later.' Indeed, even the noun form of 'record,' when used in this context, means '[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form.'

*Id.* ¶ 61 (citations omitted).

Moving to the text of the exclusion, the Illinois Appellate Court, like the Seventh Circuit, found that the inclusion of the FCRA and the FACTA in the list of enumerated statutes made it impossible to limit the exclusion to statutes regulating methods of communication, like the Illinois Supreme Court did in *Krishna. Id.* ¶ 64 (citing *Wynndalco*, 70 F.4th at 1002). This is so because the FCRA and FACTA, among other things, "'protect consumer privacy' by 'regulat[ing] the consumer reporting agencies that compile and disseminate personal information about consumers." *Id.* ¶ 63 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021)). The Illinois Appellate Court further explained, as did the Seventh Circuit, that "the four statutes listed in [the] exclusion 'encompass two distinct types of privacy: seclusion and secrecy[,]'" *id.* ¶ 68 (quoting *Wynndalco*, 70 F.4th at 1003); "[t]he TCPA and CAN-SPAM Act address seclusion, 'the right to be left alone' . . ., while the FCRA and FACTA concern secrecy, 'the right to maintain the confidentiality of one's personal information.'" *Id.* At a high level of generality, the Seventh Circuit explained, one could interpret the exclusion as concerning statutes that bear on an

individual's privacy and, because BIPA falls into the secrecy-related subset of statutes, it would fall under the catch-all provision. *Wynndalco*, 70 F.4th at 1003–04. But the Seventh Circuit could not find anything in the language of the exclusion itself—"be it in the title or in any of the provisions that follow"—that pointed to "privacy as the focus of the exclusion." *Id.* at 1003.

The Illinois Appellate Court saw things differently. It found the exclusion in *Wynndalco* distinguishable because of the inclusion of privacy-related language in the title:

> [T]his is the one difference that exists between the exclusion the Seventh Circuit considered and the one before us. While everything else in the exclusion is all but identical—with only the most inconsequential differences—the title of the exclusion in the Seventh Circuit's *Wynndalco* decision was 'Distribution of Material in Violation of Statutes.' In contrast, the title of the exclusion before us is '*Recording* And Distribution Of Material *Or Information* In Violation Of Law.'
>
> That is no small difference. We might agree with the Seventh Circuit that the phrase "distribution of material" does not scream "privacy." But the same cannot be said of our title. The '[r]ecording *** of *** information in violation of law' certainly brings to mind the secrecy prong of the privacy interest—the notion of illegally taking and keeping a record of one's information. Indeed, it is hard to imagine what else it could mean; in what other context would it be illegal to keep a record of someone's information, if it were not personal, confidential information?

*Visual Pak*, 2023 IL App (1st) 221160, ¶¶ 71–72 (emphasis in original) (citations omitted).

Viewing the title of the exclusion together with the language in the catch-all provision, the Illinois Appellate Court held that the exclusion admitted a privacy

gloss. *Id.* ¶73 ("[T]aken together with the title's reference to 'recording . . . of . . . information,' and with the four statutes that address personal privacy in their different ways, we do not find it unreasonable at all to read into this exclusion the gloss of statutes that protect personal privacy."). The state appellate court therefore held that, either under the plain-reading of the catch-all provision or by applying the canon of *ejusdem generis*, violations of BIPA were included within the catch-all provision of the Recording and Distribution of Material or Information in Violation of Law Exclusion. *Id.* ¶ 78. And, thus, coverage was barred. *Id.* ¶ 120.

The Illinois Supreme Court denied the litigants in *Visual Pak* leave to appeal, *Visual Pak*, 2024 WL 2805509, so the lay of the land is the same as it was when the parties' filed their motions for summary judgment: there is no Illinois Supreme Court decision that directly controls the issue of whether the Recording and Distribution of Material or Information in Violation of Law Exclusion bars coverage for BIPA claims. In the absence of a decision from the Illinois Supreme Court, the Court must "predict what the state's highest court [would] do," and a decision from an Illinois Appellate Court is, generally, the next best indicia of state law. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *see also Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 & n.11 (7th Cir. 2024). Where a state appellate decision disagrees with a Seventh Circuit ruling that squarely addresses the issue, however, the "Seventh Circuit ruling remains binding on a federal court." *Citizens Ins. Co. of Am. v. Mullins Food Prod., Inc.*, No. 22 C 1334, 2024 WL 809111, at *4 (N.D. Ill. Feb. 27, 2024) (citing *Luna v. United States*, 454 F.3d 631, 636 (7th

23

Cir. 2006)); *see also Luna*, 454 F.3d at 636 ("[T]he district court should not be making contrary predictions when this court has ruled squarely on the matter.").

The Court finds that Westfield's Recording and Distribution of Material or Information in Violation of Law Exclusion is materially distinguishable from the exclusion at issue in *Wynndalco*. The exclusion at issue here includes the same language in its title that was present in *Visual Pak* and absent from *Wynndalco*. "By including language that 'scream[s]' privacy in the title . . ., the plain-text reading of the Recording and Distribution Exclusion is limited to violations of statutes that protect privacy interests and avoids the ambiguity issue faced by the Seventh Circuit in *Wynndalco*." *Mullins Food Prod.*, 2024 WL 809111, at *10 (quoting *Visual Pak*, 2023 IL App (1st) 221160, ¶ 72). This reasoning is consistent with the Seventh Circuit's guidance:

> If one were to put that [privacy] gloss on the exclusion, one could readily read the catch-all provision as reaching injuries arising out of a violation of BIPA, which protects the secrecy of one's biometric information by regulating, among other things, the collection, recording and dissemination of such information. But other injuries, like those stemming from slander and libel, copyright infringement, and trademark and trade dress infringement would remain untouched by the exclusion and thus within the scope of liability coverage, on this understanding of the exclusion. Reading the exclusion to apply solely to injuries resulting from violations of statutes that protect privacy interests thus avoids the problem of the exclusion swallowing the policy's coverage provisions for 'personal and advertising injuries.'

*Wynndalco*, 70 F.4th at 1002–03.

This critical difference in policy language obviates the need to try and predict "whether the Supreme Court of Illinois is more likely to follow *Visual Pak* than to follow *Wynndalco*." *Thermoflex Waukegan, LLC*, 102 F.4th at 441. "It is enough that the exclusion in this policy does not have the flaw"—*i.e.*, the absence of a privacy gloss—"that led to the decision in *Wynndalco*." *Id.* In other words, the exclusion "leaves plenty of room for coverage of the main insured hazards." *Id.*

Because a plain reading of the Recording and Distribution of Material or Information in Violation of Law Exclusion clearly encompasses BIPA claims, the Court need not resort to *ejusdem generis* or other textual canons. *See, e.g., Mullins Food Products, Inc.,* 2024 WL 809111, at *10. But even if the catch-all provision is read to be ambiguous, *ejusdem generis* can be applied to narrow construction of the catch-all provision to encompass only statutes regulating violations of privacy, such as BIPA. *See, e.g., id.* at *11. Consistent with *Krishna*'s rationale (as enunciated by *Wynndalco*), because the title of the exclusion "points to a particular category of statutes," *i.e.,* personal privacy, and "the statutes expressly identified in the exclusion fall within that very same category," "it is an appropriate application of *ejusdem generis* to construe the more general language of the catch-all provision as encompassing only that same category of statutes." *Wynndalco*, 70 F.4th at 1001.

Accordingly, the Court finds that the Recording and Distribution of Material or Information of Law Exclusion applies to violations of BIPA and, thus, excludes CGL/umbrella coverage for the *Jaeger* Lawsuit.

### D.    THE ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSION

Because the Recording and Distribution of Material or Information of Law Exclusion bars coverage for BIPA claims, Westfield has no duty to defend UCAL in the *Jaeger* Lawsuit. For completeness, the Court will also address whether the Disclosure of Confidential or Personal Information Exclusion would also bar coverage under the 15/21 Policies.

The Access or Disclosure of Confidential or Personal Information Exclusion provides that "'[p]ersonal and [a]dvertising [i]njury' arising out of any access to or disclosure of any person's . . . confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information" is excluded from CGL/umbrella coverage under the 15/21 Policies. (*See* Ex. F at 156, 329; Ex. G at 164, 339; Ex. H, pt. 1 at 173: Ex. I, pt. 2 at 76; Ex. I, pt. 4 at 76; Ex. J at 192, 393; Ex. K, pt. 3 at 25; Ex. K, pt. 5 at 61; Ex. L at 192, 399.)

The language in this exclusion is clear and unambiguous, so the Court ascribes to it its plain and ordinary meaning. *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 595 F. Supp. 3d 677, 682 (N.D. Ill. 2022), *aff'd,* 102 F.4th 438 (7th Cir. 2024). The exclusion excludes from coverage "'[p]ersonal and advertising injury' arising out of . . . *any* access to or disclosure of any person's . . . confidential or personal information . . . or any other type of nonpublic information." (*See e.g.,* Ex. F at 156 (emphasis added).) The word "any" has a broad meaning; "that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997)

(quoting Webster's Third New Int'l Dictionary 97 (1976)). Moreover, biometric information, such as handprints and other biometric identifiers, is understood to be confidential or nonpublic information. *See*, *e.g.,* 740 ILCS 14/10, 14/15(e); *see also Thermoflex Waukegan, LLC*, 102 F.4th at 440 ("[A]lthough the effect of the exclusion depends on the meaning of the policy rather than the meaning of [BIPA], the ordinary understanding of 'confidential or personal information' includes handprints and other biometric identifiers usable for identity theft."). Injuries arising out of alleged BIPA violations—that is, the alleged disclosure of one's biometric information—thus fall squarely within this exclusion. Accordingly, the Access or Disclosure of Confidential or Personal Information Exclusion also precludes CGL/umbrella coverage under the 15/21 Policies. *See Thermoflex Waukegan, LLC*, 102 F.4th at 440–41 (affirming grant of summary judgment in favor of insurer based on an identical policy exclusion).

\* \* \* \*

In sum, the Court finds that the Recording and Distribution of Material or Information of Law Exclusion applies to violations of BIPA and, thus, excludes CGL/umbrella coverage for the *Jaeger* Lawsuit under the 13/15 and 15/21 Policies, as does the Access or Disclosure of Confidential or Personal Information Exclusion with respect to the 15/21 Policies. Westfield has no duty to defend UCAL in the underlying suit, and the Court therefore enters summary judgment in its favor.

## CONCLUSION

For the reasons stated herein, the Court grants Plaintiff Westfield Insurance Company's motion for summary judgment [73] and denies Defendant UCAL Systems, Inc.'s motion for summary judgment [76]. Judgment is entered for the plaintiff. Civil case terminated.

Date: August 5, 2024

_____
JEREMY C. DANIEL
United States District Judge